UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDMUND DAILEY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>STATE OF WASHINGTON, et al.,<br><br>　　　　　　Defendants. | CASE NO. C11-1250JLR<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

## I.　INTRODUCTION

Before the court is Defendants State of Washington, Eldon Vail, and Bernie Warner's motion to dismiss Plaintiff Edmund Dailey's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Mot. (Dkt. # 10).) The court has

considered the motion, and all appropriate materials filed in support and opposition thereto.  Being fully advised, the court grants Defendants' motion to dismiss.[1]

## II. BACKGROUND

Mr. Dailey's putative class action complaint alleges that for six days he was unconstitutionally denied release from prison by the Washington Department of Corrections ("WDOC") as a result of WDOC's policy of extending the notification period concerning the impending release of an offender from a statutory minimum of 30 days under RCW § 72.09.712 to a minimum of 35 days.  (Am. Compl. (Dkt. # 14) ¶¶ 5.1 – 5.5, 7.1-7.5.)  Defendants argue that Mr. Daily has not alleged any claims upon which relief can be granted because he does not have a constitutionally protected right to be released from prison early.  (Resp. (Dkt. # 10) at 6-15.)

Mr. Dailey alleges that he was convicted of a crime and sentenced to the jurisdiction of WDOC.  (Am. Compl. ¶ 5.1.)  In fact, Mr. Dailey was convicted of first degree rape of a child.  *See State v. Dailey*, No. 26131-6-II, 2002 WL 339417 (Wash. Ct. App. Mar. 1, 2002) (unpublished).  RCW 72.09.712 governs notification to local authorities, witnesses, victims, and others regarding the release of a sex offender.[2]  *See* RCW 72.09.712(1) & (2).  Mr. Dailey alleges that his crime qualified for community

---

[1] No party has requested oral argument, and the court deems this motion appropriate for disposition without the oral argument of counsel.

[2] The notification provisions of the statute also apply to offenders convicted of a violent offense, a domestic violence court order violation, or a felony harassment offense.  RCW 72.09.712.

notification in accordance with RCW 72.09.712 prior to his release. (*See* Am. Compl. ¶ 5.1.) The statute directs WDOC to release sex offenders not less than 30 days prior to having given notification to local authorities, and when requested by them, to victims, witnesses, and others. *See* RCW 72.09.712. In pertinent part, the statute states that "[a]t the earliest possible date, and in no event later than thirty days before release . . . [WDOC] shall send written notice of . . . release . . . about a specific inmate convicted of a violent offense, a sex offense . . . , a domestic violence court order violation . . . , or a felony harassment offense . . ." to local authorities, and victims, witnesses, and others, if requested. RCW 72.09.712(1).[3] Mr. Dailey alleges, however, that WDOC has an internal policy governing notification under RCW 72.09.712 that requires notification to be complete at least 35 days prior to the release of an offender covered by RCW 72.09.712, rather than the statutory 30-day minimum. (Am. Compl. ¶ 4.7.)

Mr. Dailey alleges that, while he was in the custody of WDOC, he earned early release credits ("good time") under RCW 9.94A.728 and 9.94A.729 and that his "earned early release date" ("EERD"), as calculated by WDOC, was December 16, 2008. (Am. Compl. ¶¶ 4.1, 5.2.) RCW 9.94A.728 states that offenders who have been sentenced to a

---

[3] Under RCW 72.09.710, the minimum notification period required prior to the release of an offender convicted of a serious drug offense is ten days. Mr. Daily alleges, however, that similar to WDOC's policy of adding five days to the minimum community notification period governing the early release of sex offenders, WDOC has an internal policy requiring a minimum of 15 days of community notice prior to the release of a drug offender. (Am. Compl. ¶ 4.7.) Mr. Dailey also purports to be a class representative for convicted drug offenders who were released only after WDOC had completed a 15-day notification period, rather than the statutory minimum of 10 days. (Am. Compl. ¶¶ 6.1-6.8.)

community custody term "may earn release time as authorized by [RCW] 9.94A.729." *See* RCW 9.94A.728.

RCW 9.94A.729(5)(a) states that the WDOC "shall . . . require the offender to propose a release plan that includes an approved residence and living arrangement." RCW 9.94A.729(5)(b). RCW 9.94A.729(5)(c) states that the WDOC "may deny" transfer to community custody prior to the expiration of the offender's custody sentence if the WDOC determines that the offender's release plan "may" violate the conditions of the sentence or conditions of supervision, place the offender at risk of violating the conditions of the sentence, place the offender at risk of reoffending, or present a risk to the victim or to community safety. RCW 9.94A.729(5)(c). Mr. Dailey alleges that he was unable to get an approved address before his EERD has passed. (Am. Compl. ¶ 5.2.)

Mr. Daily alleges that WDOC approved a release address for him on July 8, 2009. (*Id.* ¶ 5.3.) He further alleges that WDOC completed notification of local authorities and others on July 9, 2009 (*id.* ¶ 5.4), and that he was released from WDOC custody on August 13, 2009 (*id.* ¶ 5.5). Mr. Dailey alleges that his release date was 36 days after the initial approval of his release address, and six days after a 30-day notification period. (*Id.* ¶ 5.5). Mr. Daily does not allege that he was held past his prison term maximum expiration date. (*See generally id.*) Instead, he alleges that the WDOC policy or regulation of extending the notification period from a statutory minimum of 30 days to 35 days resulted in his incarceration for an additional 6 days. Based on these factual allegations, he asserts causes of action for violation of the Due Process Clause of the

Fourteenth Amendment (*id.* ¶¶ 7.1-7.5), negligence (*id.* ¶¶ 7.6-7.9), and false imprisonment (*id.* ¶¶ 7.10-7.13).[4]

### III. ANALYSIS

**A. Standards**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes all allegations of material fact in the light most favorable to the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc*, 135 F.3d 658 661 (9th Cir. 1998). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

---

[4] In his original complaint, Mr. Dailey also alleged a claim for cruel and unusual punishment under the Eighth Amendment. (Compl. (Dkt. # 1) ¶¶ 7.6-7.10.) After Defendants filed their motion to dismiss, Mr. Dailey filed an amended complaint. (*See* Am. Compl.) In his amended complaint, Mr. Dailey realleges the same claims except he omits his claim for cruel and unusual punishment (*see generally id.*), and that claim is no longer at issue in this suit. Mr. Dailey's amended complaint also includes new allegations regarding the legislative history of the statutorily required notifications that the WDOC must send prior to the release of an offender. (*See* Am. Compl. ¶¶ 4.4-4.9.) Nevertheless, the court agrees with Defendants that these new allegations "do not change the landscape of this case." (Reply (Dkt. # 16) at 2.) Accordingly, the court still considers Defendants' motion to dismiss with respect to Mr. Dailey's claims for violation of the Due Process Clause of the Fourteenth Amendment, negligence, and false imprisonment.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, --- F.3d ---, 2011 WL 6357788, at *4 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).[5]

### B. Plaintiff Possesses No Valid Liberty Interest in "Good Time"

Mr. Daily has alleged that Defendants "fail[ure] to ensure that Plaintiff and class members who earned good time . . . were timely released upon having their residence approved and notification properly completed, result[ed] in loss of earned good time without due process" in violation of the Fourteenth Amendment. (Am. Compl. ¶ 7.2.) Specifically, Mr. Dailey alleges that WDOC's policy of sending community notification at least 35 days prior to an offender's early release, as opposed to the minimum statutory requirement of 30 days under RCW 71.09.712, resulted in his retention in custody an

---

[5] Along with his response to Defendants' motion, Mr. Dailey submitted a declaration appending various documents. (Kahrs Decl. (Dkt. # 12).) Generally, a district court may not consider any material beyond the pleadings in ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted). The Ninth Circuit has carved out three exceptions to this rule. First, a court may consider material properly submitted as a part of the complaint. *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994) (citations omitted), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 111 (9th Cir. 2002). Second, a court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]" *Id.* at 454. Third, a court may take judicial notice of matters of public record. *Lee*, 250 F.3d at 688-89 (citations omitted). The documents appended to the declaration submitted by Mr. Dailey all fall within the second or third exceptions listed above. Accordingly, the submission of this declaration does not require the court to consider this motion under Federal Rule of Civil Procedure 56 summary judgment standard. In any event, the court did not find the documents to be relevant to its decision and it did not rely upon them.

additional 6 days, with a corresponding loss of 6 days of earned "good time." (*Id.* ¶¶ 4.7, 7.2.) Mr. Dailey alleges that his 6-day loss of earned "good time" violated his due process liberty interest in early release. (*See id.* ¶ 7.2.)

As a prisoner, however, neither Mr. Dailey nor the alleged class members have a constitutionally protected due process liberty interest in early release. *Foster v. Washington*, No. 11-05171-RBL, 2011 WL 2692971, at *2 (W.D. Wash. July 11, 2011). Ordinarily, a convicted person has no constitutionally protected right to be released before the expiration of his or her valid sentence. *See Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010) (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Reeb v. Thomas*, 636 F.3d 1224, 1229, n.4 (9th Cir. 2011) ("[I]nmates do not have a protected liberty interest in . . .[a] discretionary early release benefit.")

Although a state statute can create a due process liberty interest if it creates a presumption or expectation of early release, *Greenholtz*, 442 U.S. at 11-12, Washington's statutes governing the early release of individuals into community custody do not create such a presumption or expectation. Section 9.942A.7821 of the Revised Code of Washington expressly provides that "offenders have no reason to conclude that the maximum percentage of earned release time is an entitlement or creates any liberty interest." RCW 9.94A.7281. In addition, courts which have interpreted Washington's statutory scheme have uniformly held that it does not create a liberty interest in early release. In *Carver v. Lehman*, 558 F.3d 869 (9th Cir. 2009), the Ninth Circuit held that a sex offender who earned early release for good behavior "is not entitled to early release; rather, he is eligible for discretionary transfer into community custody at an earlier date

if his proposed placement is appropriate." *Id.* at 873. In *In re Personal Restraint of Mattson*, 214 P.3d 141 (Wash. 2009), the Washington Supreme Court adopted the Ninth Circuit's rationale in *Carver* and held that Washington's statutes give [WDOC] "wide latitude" in determining whether an individual may be released prior to the expiration of his or her sentence, and do "not create an expectation of release." *Id.* at 146. Both of these courts expressly rejected the notion that Washington's statutory scheme created any liberty interest in early release. *Mattson*, 214 P.3d at 146; *Carver*, 558 F.3d at 876.

More recently, a court in the Western District of Washington, relying on *Mattson* and *Carver* also held that "Washington statutes governing the early release of individuals into community custody do not create a liberty interest in that release." *Foster*, 2011 WL 2692971, at *2. In *Foster*, the offender had received 69 days of "good time" credit. *Id.* at *1. However, WDOC ultimately released him on his maximum term date because he did not submit to WDOC the address at which he planned to reside once he was released as required under RCW 9.94A.729. *Foster*, 2011 WL 2692971, at *1. The court found that the plaintiff's claim that he had a liberty interest in his "good time" was not supportable based on the discretion invested in WDOC with regard to early release and the prior case law in *Mattson*, 214 P.3d at 146, and *Carver*, 558 F.3d at 876. *Foster*, 2011 WL 2692971, at *3. As these three cases demonstrate, receipt of "good time" credits only enables offenders like Mr. Dailey to timely propose a release address and plan for transfer to community custody, so that the Department may consider and approve it, if appropriate.

The court finds the foregoing case authority to be dispositive with regard to Mr. Dailey's Fourth Amendment claim. The plaintiff in *Foster* lost 69 days of "good time" because he failed to submit the address at which he planned to reside to the WDOC for approval. *See id.* at *1, *3. Similarly, Mr. Dailey lost 6 days of "good time" because he failed to submit the address at which he planned to reside early enough for the WDOC to approve the address and complete its 35-day community notification with no loss of Mr. Dailey's "good time" days.[6] WDOC had the discretion to deny Mr. Daily's early release until such time as it had approved of his planned residence under RCW 9.94A.729(5)(b), *see Foster*, 2011 WL 2692971, at *3-*4, and until such time as it had completed its community notice under RCW 72.09.712. The statute provides that WDOC must provide community notification a minimum of 30 days prior to an offender's release. *See* RCW 72.09.712(1). The fact that WDOC requires 35 days of minimum notice under its alleged internal policy or guideline is consistent with and does not violate the statutory minimum of 30 days. *Id.* WDOC did not unconstitutionally delay Mr. Foster's release because he has no liberty interest in his earned "good time" days. If there was no constitutional violation with respect to the loss of 69 days of "good time" in *Foster*, then there certainly is no constitutional violation for the loss of 6 days here. The court grants Defendants' motion to dismiss Mr. Dailey's claim for violation of his due process rights under the Fourteenth Amendment.

---

[6] Indeed, Mr. Dailey has admitted that he was unable to get an approved address before his EERD had passed. (Am. Compl. ¶ 5.2, Resp. at 1.)

### C. Mr. Dailey's Claims for Negligence and False Imprisonment

Mr. Dailey's other claims for negligence (Am. Compl. ¶¶ 7.6-7.9) and false imprisonment (*id.* ¶¶ 7.10-7.13) also depend upon his ability to assert a liberty interest in early release. *Foster*, 2011 WL 2692971, at * 5. Mr. Dailey's negligence claim requires him to show that WDOC had a duty to release him early. *Id.* Mr. Dailey has failed to establish any such duty. Likewise, Mr. Dailey's false imprisonment claim also requires that he establish that he had a right to early release. *Id.* Mr. Dailey has failed to establish any such right. The court finds, therefore, that Mr. Dailey's negligence and false imprisonment claims are without merit. The court grants Defendants' motion to dismiss these claims.

### D. Defendants Are Entitled to Qualified Immunity

Even if Mr. Dailey's constitutional claims had merit, the individual defendants are entitled to qualified immunity with respect to those claims. Government officials are entitled to qualified immunity from damages for civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. The purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective

performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).

A right is clearly established if the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Qualified immunity protects government officials from civil liability unless the plaintiff demonstrates the violation of a particularized right that was clearly established beyond debate at the time of the alleged violation. *Ashcroft v. Al-Kidd*, --- U.S. ---, 131 S.Ct. 2074, 2080-83 (2011).

The Supreme Court has established a two-step analysis for determining whether qualified immunity applies. First, the court determines whether, "[b]ased upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right was violated, the analysis ends and there is "no necessity for further inquiries." *Id.* Second, the court determines "whether the officer could nevertheless have reasonably but mistakenly believed that his . . . conduct did not violate a clearly established constitutional right." *Id.* at 201-02. The second prong of *Saucier* is solely a question of law. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). Courts have discretion to decide which prong of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Mr. Dailey has alleged that the promulgation and implementation of WDOC's policies, which require a minimum of 35 days community notice for sex offenders and

certain other offenders (Am. Compl. ¶ 4.7), as opposed to the statutory minimum of 30 days, RCW 72.09.712(1), and a minimum of 15 days of community notice for drug offenders (Am. Compl. ¶ 4.7), as opposed to the statutory minimum of 10 days, RCW 72.09.710(1), violated his constitutional rights by resulting in his retention in custody for six additional days, with a corresponding loss of 6 days of "good time." (*See* Resp. at 12-13; Am. Compl. ¶¶ 4.7-4.8, 5.1-5.5.) Even if Mr. Dailey's constitutional claims had merit, the individual defendants would be entitled to qualified immunity because Mr. Dailey cannot show that his alleged liberty interest in "good time" was "clearly established" at the time WDOC applied the policy to him. As discussed above, the Ninth Circuit in *Carver*, the Washington Supreme Court in *Mattson*, and the federal court for the Western District of Washington in *Foster*, have all held that WDOC has wide discretion when deciding when to grant early release, and have emphasized that Washington's statutory scheme concerning early release does not create a liberty interest in "good time." *Mattson*, 214 P.3d at 146; *Carver*, 558 F.3d at 876; *Foster*, 2011 WL 2692971, at *3, *5. Accordingly, Mr. Dailey cannot establish that the violation he alleges – that WDOC regulations which extended the required minimum community notification periods by five days violated his due process liberty interest in early release – was "clearly established" at the time the regulations were adopted or implemented.

**E. Mr. Dailey Cannot Represent a Class**

Because Mr. Dailey's claims lack merit, he cannot represent a class alleging the same claims. *Foster*, 2011 WL 2692971, at *5. Accordingly, the court dismisses the claims of the putative class.

### F. Denial of Leave to Amend

Mr. Dailey has not asked the court for leave to amend his complaint. Nevertheless, after receiving Defendants' motion to dismiss, Mr. Dailey filed an amended complaint on the same day that his response to Defendants' motion was due. (*See* Am. Compl.) The court has already found that Mr. Dailey's amended complaint did not change the legal landscape with respect to Defendants' motion to dismiss. (*See supra* at 5, n.5.) Thus, after reviewing Defendants' motion to dismiss, and amending his complaint once, Mr. Dailey still failed to state a claim upon which relief could be granted.

When the court grants a motion to dismiss, it must also decide whether to grant leave to amend. *Mora v. Countrywide Mortg.*. No. 2:11-cv-00899-GMN-RJJ, 2012 WL 254056, at *2 (D. Nev. Jan. 26, 2012). Ordinarily, leave to amend a complaint should be freely given following an order of dismissal. *See* Fed. R. Civ. P. 15(a)(2). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile."). "[W]here the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend." *Fed. Nat'l Mortg. Ass'n v. Wages*, No. 11-cv-05396 RBL, 2011 WL 5138724, at *2 (W.D. Wash. Oct. 28, 2011) (citing *Albrecht v. Lund*, 845 F.2d 193, 195-196 (9th Cir. 1988)). Here, Mr. Dailey has already attempted to amend his complaint once without succeeding in pleading a legally cognizable claim. The court concludes that in

light of its rulings here concerning the lack of legal underpinnings with regard to Mr. Dailey's claims, any further attempts at amendment would be futile. Accordingly, the court denies leave to amend Mr. Dailey's amended complaint.

## IV. CONCLUSION

Based on the foregoing, the court GRANTS Defendants' Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Mr. Dailey's claims (Dkt. # 10), and Mr. Dailey's claims are dismissed with prejudice in their entirety.[7]

Dated this 3rd day of February, 2012.

JAMES L. ROBART
United States District Judge

---

[7] The court finds it unnecessary to address Defendants' arguments that Mr. Dailey's claims should be dismissed based on *Heck v. Humphrey*, 512 U.S. 477, 479 (1994), because his confinement has not been previously held to be invalid by a Washington Court (Mot. at 21-22), and based on the inapplicability of respondeat superior and vicarious liability to claims based on 42 U.S.C. § 1983 (Mot. at 23-24).